## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**UNITED STATES OF AMERICA,**

**v.**                                           **Case No. 8:19-CR-553-T-23AAS**

**STANLEY TIPTON**

_____/

## SENTENCING MEMORANDUM
## IN SUPPORT OF A LOW-END PROBATION SENTENCE

COMES NOW, the Defendant, STANLEY TIPTON, through undersigned counsel and pursuant to U.S.S.G. §2T3.1 and 18 U.S.C. §3353(a), and hereby files this Sentencing Memorandum supporting his "sophisticated means" guideline objection and the imposition of a sentence of probation. As grounds in support, Mr. Tipton shows:

### FACTUAL AND PROCEDURAL HISTORY

Stanley Tipton is a 46-year-old, first-time non-violent felony offender. PSR ¶¶42-48, 59. He has entered a guilty plea to a One Count Superseding Information charging him with Evading Import Duties or Restrictions in violation of 19 U.S.C. §3907(a)(2) and 18 U.S.C. §2. PSR ¶¶5-6. Mr. Tipton's offense specifically relates to his inducement by an undercover Homeland Security Investigation Special Agent to obtain and provide fraudulently issued Kimberly Process Certificates designed to avoid the requirements of the Clean Diamond Trade Act in order to facilitate the

1

unlawful importation of "blood diamonds" into the United States. PSR¶¶11-24.

### History and Characteristics of Mr. Tipton

Mr. Tipton was born on February 18, 1974, in Hamilton, Ohio. PSR ¶59. He was raised in a lower- to middle-class home as the oldest of four children. PSR ¶60. His father worked as a construction laborer and his mother as a beautician. *Id*. Mr. Tipton describes a difficult childhood in which he lost his youngest brother, who at age 6 was hit and killed by an automobile; was raised primarily by his mother and grandmothers; and had a father struggling with a crack cocaine addiction. PSR ¶¶60-61. Mr. Tipton was estranged from his father during his formative years and spent most of his youth in violent neighborhoods in New Orleans, LA. PSR ¶¶61-62. When Hurricane Katrina devastated the city of New Orleans, Mr. Tipton and his family were forced to relocate to Atlanta and then subsequently moved to Texas. PSR ¶61.

Despite these difficult childhood circumstances, Mr. Tipton avoided any contacts with the juvenile justice system in Louisiana, Atlanta, and Texas, and in 1993, graduated from Channelview High School in Channelview, Texas. PSR ¶¶42, 75. As an adult, Mr. Tipton has held steady employment as a studio recording engineer, loan broker, and cook. PSR ¶¶77. In addition to maintaining his employment, Mr. Tipton has coached youth football for the past 7 years and has worked with others to provide safe extracurricular activities to the youth in his community. PSR ¶30.

Mr. Tipton has no prior felony convictions and his criminal history is limited to an expired tag offense and offenses related to his personal use of marijuana. PSR ¶¶43-47.[1] Despite having a 20-year history of marijuana abuse, Mr. Tipton has succeeded in abstaining from using marijuana and has complied with all of his pretrial release conditions over the past 13 months. PSR ¶¶10, 73.

Mr. Tipton describes himself as a "good and peaceful person" who did not make a "smart move" while trying to explore a potential career as a diamond broker. PSR¶¶28, 30. His efforts to forge a career in the diamond industry led to his involvement in the criminal conduct that brings him before this Court as a 46-year-old first-time felony offender. *Id*.

### Facts and Circumstances of the Case

Having previously worked as a loan broker and with friends making good money in the diamond industry, Mr. Tipton decided to explore the internet for opportunities as a diamond broker. PSR ¶28. In doing so, not only did he fail to find legitimate diamond business opportunities, but he became the victim of a fraud scam. Things appeared to change in the summer of 2019, when Mr. Tipton communicated with a Homeland Security Investigation (HSI) Special Agent posing undercover as a diamond broker. PSR ¶14. The UA stated interest in obtaining official-looking

---

[1] Specifically, Mr. Tipton's criminal history consist of convictions for possession of marijuana (2004, 2005), possession of a marijuana grinder (2010), possession of marijuana (2011) and expired plates (2018). PSR ¶¶43-47.

documents to help him smuggle diamonds into the United States. *Id*.

To lawfully import diamonds into the United States, and to ensure per the Clean Diamond Act of 2003 that imported diamonds were not mined in a war zone and sold to finance an insurgency, an invading army's war efforts, a warlord's activity, or terrorism (*i.e.* to ensure they are not so-called "blood diamonds"), certain customs requirements must be met. PSR ¶11. For example, to ensure that rough diamonds are not "blood diamonds," the Kimberly Process Certification Scheme was created. *Id*. Countries that are members of the Kimberly Process Certification Scheme (including the United States) must use Kimberly Process Certificates to certify that diamonds being imported and exported are not so-called "blood diamonds."  PSR ¶¶12-13.

Kimberly Process Certificates are issued from a diamond's country of origin to certify its carat weight, mass, value, the name of its exporter and importer, and the government authority issuing its certificate. PSR ¶12. Diamonds cannot lawfully be imported into or exported out of the United States unless they contain a lawfully issued Kimberly Process Certificate, but no U.S. duties or taxes are placed on them upon importation. *Id; PSR ¶25.

The UA advised Mr. Tipton that the UA represented a group of purchasers who had rough diamonds mined in Russia coming into the United States without Kimberly Process Certificates. PSR¶15. The UA offered Mr. Tipton monetary

compensation if he could obtain Kimberly Process Certificates to help facilitate the importation of the Russian diamonds into the United States. PSR ¶24. Mr. Tipton advised that he had contacts in Tanzania and Namibia who he believed could assist in obtaining the fraudulently issued Kimberly Process Certificates that the UA was seeking. PSR ¶15.

On August 2, 2019, Mr. Tipton sent the UA a Kimberly Process Certificate for 9.85 carats of diamonds that was reportedly issued by the Guinean Ministry of Mines and Geology. PSR ¶17. On August 6, 2019, the UA advised Mr. Tipton that "his people" were comfortable with the appearance of the certificate but wanted the next certificate to be issued by either Tanzania or Sierra Leone. PSR ¶18.  Mr. Tipton advised that he believed he could make that happen but would need more money to "grease" the people on the ground in Africa obtaining the certificates. *Id*.

On August 29, 2019, the UA received a package from Mr. Tipton containing a Kimberly Process Certificate reportedly issued by the Republic of Sierra Leone. PSR ¶20. Shipping records confirmed that both the Sierra Leone Kimberly Process Certificate and the Guinea Republic Kimberly Process Certificate were originally shipped from Conakry, Guinea Republic in July and August of 2019. PSR ¶21. Mr. Tipton was paid $7,000 by the UA for the first certificate, of which he profited $3,000, and $13,000 for the second certificate, for which he profited $10,000. PSR ¶24. In total, Mr. Tipton made $13,000 for his role in the offense. *Id*. As part of his

persona, the UA told Mr. Tipton that he would pay him in bitcoins. Mr. Tipton had never previously dealt with bitcoins and the UA had to explain to Mr. Tipton what bitcoins where and how to access and use them.

On November 19, 2019, Mr. Tipton was charged in a One Count Indictment alleging an 18 U.S.C. §371 conspiracy. PSR ¶1-2. On November 21, 2019, Mr. Tipton was arrested in Tampa and provided a post-*Miranda* video-recorded confession to his and others' roles in obtaining the two unlawfully issued Kimberly Process Certificates. Docs. 11, 12.  Mr. Tipton made his Initial Appearance on the same day, and on November 22, 2019 he was released on a $40,000 signature bond with pretrial supervision. Docs. 14, 16.

On August 18, 2020, the government filed a One Count Superseding Information alleging a violation of 19 U.S.C. §3907(a)(2) and 18 U.S.C. §2, and on September 30, 2020 Mr. Tipton entered a guilty plea to the count pursuant to a written plea agreement. PSR ¶4-6. Mr. Tipton's sentencing hearing is set for December 21, 2020, at 9:00 a.m. Doc. 53.

### GUIDELINE CALCULATIONS

The applicable guideline provision for Mr. Tipton's offense conduct is U.S.S.G. §2T3.1, which is aptly titled: "Evading Import Duties or Restrictions (Smuggling); Receiving or Trafficking in Smuggled Property." PSR ¶32. The base offense level under §2T3.1 is determined by the tax loss created by the smuggling

activity. *See* §2T3.1(a). Since there are no U.S. duties or taxes imposed on diamonds imported into the United States, there is no actual or attempted tax loss in the present case. PSR ¶32. Section 2T3.1(a)(3) directs that when the tax loss is $200 or less, the base offense level is 4. *Id.* Section 2T3.1(b)(1) provides that "if the offense involves sophisticated means, increase by 2 levels and if the resulting offense level is less than 12, increase to level 12." *See* §2T3.1(b); PSR ¶33.

The United States Probation Office has correctly determined that because there is no tax loss, Mr. Tipton's base offense level is 4. PSR ¶32. However, it has further alleged that Mr. Tipton's offense conduct involved "sophisticated means," and thus increasing his adjusted offense level by 8 to become a level 12. *Id;* PSR ¶¶33. With a two-level acceptance of responsibility reduction, the Probation Office has suggested that Mr. Tipton's total offense level is 10. PSR ¶¶39-40.

Mr. Tipton has no prior felony convictions, and with three criminal history points he is a criminal history category II offender. PSR ¶¶43-49. With a total offense level of 10 and a criminal history category II, the United States Probation Office suggests that Mr. Tipton's advisory guideline imprisonment range is 10-16 months and that he is eligible for Zone B sentencing options which would allow for a low-end sentence of probation with the special condition that Mr. Tipton serve 10 months of home detention. PSR ¶82. Pursuant to Mr. Tipton's written plea agreement, the government has agreed to not oppose Mr. Tipton's request for a low-end sentence.

Doc. 41.

Mr. Tipton objects to the application of the §2T3.1(b)(1) "sophisticated means" enhancement, which if sustained by this Court, would result in a total offense level of 2 and an advisory sentencing range of 0-6 months, allowing for a low-end sentence of probation between 1 and 5 years. *See* PSR Addendum; PSR ¶86 *citing* 18 U.S.C. §3561(c)(1).

### OBJECTION TO APPLICATION OF U.S.S.G. § 2T3.1(b)(1) "SOPHISTICATED MEANS" ENHANCEMENT

The United States Probation Office and the government seek to apply the "sophisticated means" enhancement pursuant to § 2T3.1(b)(1), resulting in an 8-level increase in Mr. Tipton's total offense level. PSR ¶¶33-40. Section 2T3.1(b)(1) provides:

> If the offense involves sophisticated means, increase by **2** levels. If the resulting offense level is less than **12**, increase to level **12**.

In Application Note 3 to U.S.S.G. § 2T3.1, the Sentencing Commission explicitly directs that "for purposes of subsection (b)(1), **'sophisticated means'** means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." The Commission further explains that "conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts ordinarily indicates sophisticated means." In the present case, there was nothing "especially complex"

8

or "especially intricate" about Mr. Tipton's offense, either in its execution or concealment.

Factually, the UA induced Mr. Tipton to obtain two fraudulently issued Kimberly Process Certificates from African countries in exchange for $20,000. Mr. Tipton "greased" people on the ground in Africa to obtain the certificates using cash payments. The fraudulently issued certificates were mailed to Mr. Tipton from Africa, where the certificates originated, and Mr. Tipton then mailed them to the UA. Assets or transactions were not hidden through fictitious entities, corporate shells, or offshore financial accounts. Instead, traditional private DSL mail carriers easily traced by law enforcement were used to ship the certificates.

Mr. Tipton's smuggling activities involved the most basic methods and could hardly be described as "especially complex" or "especially intricate." *See United States v. Patino*, 912 F.3d 473, 478 (8th Cir. 2019)(§2T3.1 "sophisticated means" enhancement properly applied where defendant smuggled over ninety-five packages of HGH from Mexico to the United States over the course of more than a year and a half, mass marketed the HGH, used bank transfers to hide transactions, and packaged and shipped the HGH in misleading ways to avoid detection); *United States v. Clarke,* 562 F.3d 1158, 1165 (11th Cir. 2009)(§2T3.1(b) "sophisticated means" enhancement properly applied to tax evasion defendant who over a three year period concealed the true extent of his income by depositing his salary into accounts not in

his name, instructing his employer to pay his creators directly, and having his employers pay his life and disability premiums directly to the insurance carriers).

Despite the simplicity of Mr. Tipton's offense conduct and the lack of any concealment of his offense, the United States Probation Office has suggested that Mr. Tipton's Offense conduct involved "sophisticated means" because the false KPC's "were created" and "sent from Conakry, Guinea Republic." PSR ¶33. The fact that the fraudulently issued Kimberly Processed Certificates were created and shipped from Africa, where they were reportedly issued, does not make Mr. Tipton's offense "especially complex" nor "especially intricate." In fact, all of his offense conduct was inherent to the most basic forms of smuggling activity.

As observed in *United States v. Montano*, 250 F.3d 709, 715. (9th Cir. 2001), "smuggling by its nature, involves active steps to avoid detection. Therefore, applying the sophisticated concealment enhancement to a smuggling charge requires the conceptually difficult task of separating out those concealment activities that represent more 'sophisticated' concealment.'" In *Montano*, the Court reversed the District Court's §2T3.1(b)(1) enhancement for a defendant smuggling approximately $40,000 worth of Mexican pharmaceuticals into the United States where the defendant's activities of wiring money to individuals who would purchase the pharmaceuticals in Mexico and drive them across the border "represent[ed] a

10

crude and very basic smuggling operation" and any of his "concealment activities were all inherent in the activity of smuggling." *Montano*, 250 F.3d at 715.

As observed by the *Montano* Court, the defendant's wiring of funds to the transporters and the use of cash payments were "neither unusual nor particularly sophisticated" and thus, there was no evidence of concealment beyond what is inherent in smuggling. *Montano,* 250 F.3d at 715. As such, the district court's application of the §2T3.1(b)(1) "sophisticated means" enhancement was overruled by the appellate court and the case was remanded for a new sentencing hearing. *Montano*, 250 F.3d at 716.

Similar to *Montano*, no acts taken by Mr. Tipton were "especially complex" or "especially intricate." The UA wanted certificates issued by African countries and Mr. Tipton paid people in Africa to obtain them. The fact that the certificates were created in and shipped from Africa does not make his offense complex or intricate, let alone "especially" complex or "especially" intricate. As the *Montano* Court observed, "Webster's dictionary defines 'sophisticated' as 'deprived of native or original simplicity: as (a) highly complicated: many sided: COMPLEX.'" *Montano*, 250 F.3d at 715 *citing* Webster's Third Int'l Dictionary at 2174 (1993). As was the case in *Montano*, Mr. Tipton's scheme was neither many-sided nor complex and as such this Court must sustain his objection.

Finally, in the Addendum to the Presentence Report, the Probation Office suggest that the use of cryptocurrency by the UA makes Mr. Tipton's offense complex because using cryptocurrency is a form of concealment. *See* PSR Addendum. This argument too must fail. Mr. Tipton did not suggest that cryptocurrency be used by the UA, did not use cryptocurrency to pay others on the ground in Africa who obtained the certificates, and did not know how to access cryptocurrency until after the UA talked him through the process.

Certainly, it would be unjust for an undercover agent to be allowed to manipulate a defendant's guideline range by 8-levels by simply employing a payment method completely foreign to a defendant. As such, this Court must sustain Mr. Tipton's objection, which would result in a total offense level of 2 and an advisory sentencing range of 0-6 months.

### REQUEST FOR IMPOSITION OF A REASONABLE SENTENCE OF PROBATION

Mr. Tipton's properly-calculated advisory guideline sentencing range is 0-6 months. Under Mr. Tipton's plea agreement, the government does not oppose Mr. Mr. Tipton receiving a low-end sentence, which would be the imposition of between 1 and 5 years of probation. Doc. 41. Given Mr. Tipton's lack of prior felony criminal history, sentencing Mr. Tipton to a term of probation between one and five years is appropriate and reasonable, and supported by the 18 U.S.C. §3553(a) factors.

As discussed above, Mr. Tipton is a 46-year-old, non-violent individual with

no prior felony criminal convictions, whose criminal history consists of offenses for personal use of marijuana and driving with an expired tag. In his attempt to forge a career as a diamond broker, Mr. Tipton was induced by an HSI agent posing as a diamond broker to unlawfully obtain two Kimberly Process Certificates for unlawfully importing diamonds into the United States. Because there is no duty or tax imposed on imported diamonds, even if Mr. Tipton's offense had succeeded, there would have been no tax loss to the United States.

Mr. Tipton has never previously been involved in obtaining fraudulently issued Kimberly Process Certificates, nor has he ever been involved in the unlawful importation of diamonds or any other items into the United States. He is not a smuggler by trade, but someone who foolishly got involved in online activity that he knows he should have avoided.

Mr. Tipton does not require deterrence. His arrest, prosecution, and felony conviction have already deterred him from committing any future unlawful activity. Given Mr. Tipton's age, the nature of his offense, and his conduct while on supervised release over the past 13 months, the likelihood that Mr. Tipton will reoffend is low, and thus a term of imprisonment is not required to deter him. A felony conviction paired with a term of community supervision will be sufficient but not greater than necessary to deter him from committing future crimes.

Mr. Tipton is mindful and guilt-ridden that, for the first time in his life, he has

committed a felony offense for which he must be punished. A felony conviction and a probationary sentence would provide "just punishment" for the offense, "reflect the seriousness of the offense," and "promote respect for the law."

At 46 years, and unlike many defendants who often appear before this Court, Mr. Tipton has never been convicted of a felony offense. A federal felony conviction and a reasonable term of probation constitutes a significant penalty for Mr. Tipton, especially given his current lack of significant resources and job opportunities and the fact that he profited a relatively small sum from his criminal activity. Mr. Tipton did not significantly enrich himself from his offense. He recognizes that he made a big mistake in getting involved in the illegal conduct solicited by the undercover HSI agent, and he is deeply remorseful for his stupidity.

A felony conviction and a probationary sentence will reasonably reflect the out-of-character nature of Mr. Tipton's offense. Finally, such a sentence will create respect for the law in that it will illustrate that the law has appropriately considered Mr. Tipton as an individual and has taken into consideration his post-offense cooperative efforts.

WHEREFORE, the Defendant, STANLEY TIPTON, respectfully moves this Honorable Court to sustain his guideline objection and sentence him to a low-end sentence of probation.

DATED this 11th day of December 2020.

Respectfully submitted,

JAMES SKUTHAN
ACTING FEDERAL DEFENDER

/s/ Adam B. Allen
Adam B. Allen
Assistant Federal Defender
Florida Bar No. 0998184
Office of the Federal Defender
400 North Tampa Street
Suite 2700
Tampa, Florida 33602
Telephone:   (813) 228-2715
Facsimile:    (813) 228-2562
Email:  Adam_Allen@fd.org

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 11th day of December 2020, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send notice of the electronic filing to:

AUSA Jay Hoffer

*/s/ Adam B. Allen*
Adam B. Allen
Assistant Federal Defender

16